UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES GELLERT, <u>et</u> <u>al.</u>, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 05-19 (GK) |
| | ) |
| DISTRICT OF COLUMBIA PUBLIC | ) |
| SCHOOLS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>MEMORANDUM OPINION</u>

Plaintiffs are Jesse Gellert, a minor, and his parents, Charles and Susan Gellert. Plaintiffs bring suit under 20 U.S.C. § 1415i(2)(A) of the Individuals with Disabilities Education Act ("IDEA") against Defendant, District of Columbia Public Schools ("DCPS"). This matter is before the Court on Plaintiffs' Motion for Summary Judgment, [#14], and Defendant's Cross Motion for Summary Judgment, [#18]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, Plaintiffs' Motion is **granted**, and Defendant's Motion is **denied.**

## I.   Background[1]

Jesse Gellert is a fifteen year-old[2] resident of the District of Columbia who qualifies for free appropriate public education ("FAPE") under the IDEA.

---

[1] The parties do not dispute the facts set forth in this section.

[2] Jesse was fifteen at the time these Motions were briefed. It is unclear from the record whether he has since turned sixteen.

Jesse attended public schools in the District of Columbia through the 2002-2003 school year, when he was an eighth grade student at Deal Junior High School ("Deal").  At the end of the sixth grade, after Jesse's performance in school had deteriorated, his parents requested that DCPS evaluate him for special education services.  Pls.' St. of Material Facts at ¶ 4.  DCPS determined that Jesse was ineligible for such services.

Jesse's emotional state and academic performance continued to worsen, and in January 2003, his parents requested a re-evaluation to determine if he was qualified for special education services.  Again, DCPS concluded that he was ineligible.  By letter dated March 17, 2003, Jesse's parents notified DCPS that they were withdrawing him from Deal and enrolling him at the  Kingsbury Day School ("Kingsbury"), a private school specializing in disabled students, at public expense.  Id. at ¶ 5.  Jesse began at Kingsbury for the 2003-2004 school year, and remained there for the 2004-2005 school year.  Id.

Since enrolling at Kingsbury, Jesse has shown significant improvement in his academic performance.  Id. at ¶ 14;  see AR, Hearing Tr. at 30-35; Testimony of Dr. Spector, filed July 8, 2005, Dkt. #15 ("While at Deal, in large classes, Jesse exhibited extremely poor academic motivation and received poor grades, despite having the ability to earn As and Bs as he has demonstrated at Kingsbury").

On August 25, 2003, Jesse's parents requested a due process hearing to seek reimbursement for the costs of his attendance at Kingsbury for the 2003-2004 year, arguing that he was entitled to special education services, and DCPS's refusal to find him eligible for such services resulted in a denial of FAPE under the IDEA. Id. at ¶ 6.  The due process hearing began on November 18, 2003. After some testimony was provided, the Hearing Officer issued an interim order, requiring DCPS to fund evaluations of Jesse.

Evaluations were completed by the Spring of 2004.  They included a psychological report by Rolando J. Diaz, PhD., which discussed Jesse's many emotional issues, including anxiety produced by crowded settings and depression.  Id. at ¶ 8.

On May 19, 2004, DCPS held a Multi-Disciplinary Team meeting to review the evaluations, and determined that Jesse was eligible for special education under the IDEA.  He was classified as emotionally disturbed "due to his anxiety and stresses impacting his ability to succeed in school, to be available emotionally to teach."  Id. at ¶ 9.

Kingsbury held a meeting on June 3, 2004 to develop an individualized education plan ("IEP") for Jesse for the 2004-2005 school year.  Id. at ¶ 10.  The IEP stated that Jesse required a full time special education placement and "a small class environment with a low student-teacher ratio, specialized instruction and related services . . . ."  Id.  DCPS was not

represented at this meeting.

On July 14, 2004, another IEP meeting was held at Deal. The meeting was attended by several representatives of DCPS, Jesse's parents, their lawyer, and representatives from Kingsbury who were personally familiar with Jesse. Id. at ¶ 11. The participants agreed on annual goals and short term objectives for Jesse's IEP, but disagreed as to whether Jesse needed a small class size to benefit from the educational services. Id. at ¶ 12. DCPS maintained that a small class size was not required, and that therefore Woodrow Wilson High School ("Wilson") was an appropriate placement.

Wilson's student body exceeds 1,400 students. Its special education program services students whose primary disability is learning disabled. Id. at ¶ 21. The school has approximately 125 special education students, with five or six students who are also emotionally disturbed. Special education class sizes range from nine to twenty students. At Wilson, Jesse would attend some regular education classes, which have up to thirty students, and which do not have teaching aides. On some days, all of his classes would be regular education classes. Id. at ¶ 22.

Jesse's parents and the Kingsbury representatives did not agree to the IEP that was developed because it did not contain a requirement for a small class size. They likewise objected to the placement recommendation at Wilson, because nobody at the meeting

could describe Wilson's program to them.

Jesse's parents subsequently requested a resumption of the due process hearing to add a request for tuition reimbursement for the 2004-2005 school year at Kingsbury, arguing that Wilson was an inappropriate placement.  Id. at ¶ 13.  The due process hearing resumed on November 18, 2004 before a different Hearing Officer.  At the hearing, DCPS agreed to reimburse the Gellerts for Jesse's 2003-2004 tuition at Kingsbury.  Thus, the only issue remaining was Plaintiffs' request for tuition reimbursement for the 2004-2005 school year.  Id. at ¶ 16.

The Hearing Officer heard testimony from Marlene Gustafson, Director of Kingsbury, Charles Gellert, Jesse's father, and Charles Williams, Interim Coordinator of Special Education at Wilson.  This testimony will be discussed more thoroughly herein.

In a decision dated December 6, 2004, the Hearing Officer denied Plaintiffs' request and dismissed the case.

## II.  Standard of Review

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A fact is "material" if it might affect the outcome of the action under the governing law.  Anderson v. Liberty Lobby, Inc.

477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotations omitted).  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251-52.

**III. Analysis**

    **A.   IDEA Framework**

Congress enacted the IDEA to ensure that children with disabilities have access to "a free appropriate public education

that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A) (2005). School districts must ensure that "all children with disabilities residing in the State . . . who are in need of special education and related services" are identified. Branham v. Gov't of the District of Columbia, 427 F.3d 7, 8 (D.C. Cir. 2005) (citing Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005)). Once such children are identified, a "'team' including the child's parents and select teachers, as well as a representative of the local educational agency with knowledge about the school's resources and curriculum, develops an 'individualized education program,' or 'IEP,' for the child." Branham, 427 F.3d at 8. "[T]he IEP must, at a minimum, 'provid[e] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.'" Id. (citing Board of Educ. Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 203 (1982)).

State and local educational agencies receiving federal assistance under the IDEA must institute procedural safeguards, 20 U.S.C. § 1415(a), including providing parents of a disabled child "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement" of their child, id. § 1415(b)(6). After parents make such a complaint, they are entitled to "an impartial due process

hearing" conducted by the agency, id. § 1415(f)(1). "Any party aggrieved by the findings and decision made" in the due process hearing can bring a civil action in either state or federal court to obtain "appropriate" relief. Id. § 1415(i)(2)(A)-(B).

During a due process hearing held pursuant to the IDEA, "DCPS bears the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the education needs of the student." D.C. Mun. Reg. § 3022.16; see also Scorah v. District of Columbia, 322 F. Supp. 2d 12, 14 (D.D.C. 2004).[3]

The party challenging a hearing officer's decision in federal court carries the burden of proof. Angevine v. Smith, 959 F.2d 292, 295 (D.C. Cir. 1992); Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988). The court may make an independent determination but "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the

_____

[3] In Schaffer ex rel. Schaffer v. Weast, 126 S.Ct. 528, 536 (U.S. 2005), the Supreme Court held that, in the absence of state legislation specifically allocating the burden of proof in an IDEA due process hearing, "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." The Court specifically declined to decide whether "[s]tates may, if they wish, override the default rule and put the burden always on the school district." Id. at 537. Thus, the recent ruling in Schaffer does not affect the validity of the District of Columbia's regulation placing the burden of proof at the administrative level on DCPS. See D.C. Mun. Reg. § 3022.16.

hearing officer and school officials responsible for the child's education." Lyons v. Smith, 829 F. Supp. 414, 418 (D.D.C. 1993). The court employs a "preponderance of the evidence" standard of review, and may grant relief as it deems appropriate. 20 U.S.C. § 1415(i)(2)(C).

While the courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review," Rowley, 458 U.S. at 206, "given the district court's authority to 'hear additional evidence at the request of a party' and 'bas[e] its decision on the preponderance of the evidence,' IDEA 'plainly suggest[s] less deference than is conventional' in administrative proceedings." Reid, 401 F.3d at 521 (internal citations omitted).

The role of a reviewing court under the IDEA is two-fold. First, it must determine whether DCPS has complied with the procedural requirements of the IDEA. Rowley, 458 U.S. at 206. Second, it must determine whether the "individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive additional benefits." Id. at 207.

**B.    Wilson Can Not Serve Jesse's Educational Needs**

    **1.    DCPS Failed to Establish at the Due Process Hearing that Jesse's IEP and Placement at Wilson Were Adequate**

DCPS had the burden at the due process hearing to establish that Jesse's IEP and placement at Wilson were adequate to meet his individual educational and emotional needs.  For the reasons set forth below, the Court concludes that DCPS failed to meet this burden, and that the Hearing Officer's conclusion to the contrary was erroneous because he failed to address Plaintiffs' main objection to placement at Wilson – namely, its inability to provide Jesse the small class size and quiet, calm learning environment he requires.

Defendant argues that the Hearing Officer was only asked to consider whether Wilson could implement the July 14, 2004 IEP, not whether the underlying IEP was adequate to provide educational benefit to Jesse.  This argument is unpersuasive.  The sole point of disagreement between the parties, and the reason Plaintiffs requested the due process hearing in the first place, was that the IEP did not take into account, and Wilson could not accommodate, Jesse's need for a small class size and a quiet, calm learning environment.  See AR at 36.  Indeed, since the very beginning of the administrative process, Plaintiffs have objected to the failure of the July 14, 2004 IEP to include a requirement for a small class size, and to placement at Wilson because it could not accommodate

10

Jesse's need in this regard.[4]

At the Multi-Disciplinary Team ("MDT") meeting on July 14, 2004, Jesse's representatives emphasized the need for a small class size and controlled environment.  AR at 31 ("Discussion around anxiety in school – At Deal: anxiety showed up in the cafeteria due to the noise and crowds . . . shows up at Kingsbury when he is in large settings of 50 students"); id. at 36 ("Atty. Miller requested that small classroom setting be listed as an accommodation . . . DCPS would not agree . . . Kingsbury requested/suggested class size of 9 students being best for Jesse); id. at 38 ("Question from Atty. and parents is . . . can Wilson provide a small self-contained class of 12 students or less . . . Kingsbury: size of 25 is probably too large, has seen him to look physically uncomfortable").  The MDT meeting notes indicate that "Gellerts and Atty. Miller . . . were not in agreement with [the] proposed placement [at Wilson]. [They] stated this not to be in the best interest of Jesse."  Id.   Therefore, the record is clear that Jesse's representatives specifically objected to the IEP, which did not include a specific requirement for a small class size and the related accommodation of a quiet learning environment.

_____

[4]  It is worth noting that the first IEP developed for Jesse at Kingsbury, which did not include the input of DCPS and is not the subject of this appeal, did clearly indicate that Jesse "requires a small class environment with a low student-teacher ratio, specialized instruction and related services integrated into the program."  AR at 95.

At the due process hearing on November 29, 2004, Plaintiffs again presented evidence supporting Jesse's need for a small class size.  When asked specifically about the appropriate class size for Jesse, Marlene Gustafson, director of Kingsbury, testified, "the smaller, the better for him.  This year, Jesse's average class size is about eight kids.  Last year, it was six kids, with two adults as part of the instructional team within the classrooms.  And he benefits from having the smaller classes; the uncluttered environment; . . . very small class support, even within the classes . . . And this cuts across all of the classes."  Hearing Tr. at 38-39.

Plaintiffs also put forth evidence showing that since moving from the hectic, unstructured setting at Deal, to Kingsbury, which provided the small class size and controlled environment he requires, Jesse's academic performance improved significantly.  See AR, Hearing Tr. at 30-35; Pls.' St. of Material Facts at ¶ 14.

Despite the evidence presented by Plaintiffs at both the MDT meeting and the due process hearing to establish Jesse's needs for a small class size and calm learning atmosphere, Defendant failed to present any evidence to show either that the IEP was appropriate without taking these needs into account, or that placement at Wilson was appropriate despite the fact that it could not accommodate these needs.

The only witness DCPS presented at the hearing was Charles

Williams, Wilson's interim special education coordinator, who was not present at the hearing and gave his testimony over the telephone, had never met Jesse, and did not see his IEP until that morning.

Williams was specifically asked by both the Hearing Officer and Jesse's lawyer about whether the class size at Wilson would be suitable for Jesse's educational and emotional needs. He testified that class sizes vary, depending on the circumstances. Id. at 61-62. He further testified that Jesse would probably have "a combination schedule, regular [education] and special [education]," and that there would be some days when Jesse would attend only regular education classes. Id. at 77. Those classes could have as many as thirty students, and would not be equipped with a teacher's aide. Id. at 78. This testimony established that Jesse's individual need for a small class size and related accommodations would not be satisfied at Wilson.

Defendant argues that "[f]ailure to include one requested accommodation, i.e. class size, should not render the IEP inappropriate." Def.'s Mot. at 8. However, DCPS failed to present any evidence to establish that Jesse could benefit in his education without this specific accommodation, and failed to rebut any of Plaintiffs' evidence to the contrary. As such, Defendant failed to meet its burden of proof at the due process hearing that FAPE would be provided. D.C. Mun. Reg. § 3022.16.

In his decision, the Hearing Officer erroneously concluded that "[t]he parents have not raised the issue that the IEP is not appropriate in their hearing request or in the due process hearing . . . the only issue they raised was that Wilson was not an appropriate placement." AR at 6. As noted above, in this case, those two issues are necessarily intertwined. The main reason Plaintiffs contended Wilson was an inappropriate placement was because it could not provide Jesse the small classroom setting and calm, quiet learning environment he requires to make educational progress. Since the IEP failed to include such accommodations, despite Plaintiffs' specific requests, Plaintiffs' challenge at the due process hearing clearly related to the IEP as well as the placement at Wilson.

Thus, without addressing the main point of contention between the parties – namely whether Wilson could accommodate Jesse's need for a small class size and related services – the Hearing Officer could not have accurately determined whether Jesse could receive FAPE at Wilson. Therefore, his conclusion that "DCPS offers a program at Wilson S.H.S. [Senior High School] that is reasonably calculated to provide educational benefits and can implement the student's IEP," "deserves little deference," and is not supported by the record. See Reid, 401 F.3d at 521.

2.   **Additional, Uncontradicted Evidence Submitted by Plaintiffs Confirms that Jesse Requires a Small Class Size Accommodation and that Wilson Is Not an Appropriate Placement Because It Cannot Meet that Requirement**

The IDEA states that a court hearing a challenge of an administrative determination under the Act, "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.  20 U.S.C. § 1415 (i)(2)( C).  The district court exercises its discretion to determine if such "additional evidence" is necessary.  O'Toole By and Through O'Toole v. Olathe Dist. Schools Unified Sch. Dist. No. 233, 144 F.3d 692, 708 (10th Cir. 1998); Monticello Sch. Dist. No. 25 v. George L., 102 F.3d 895, 901 (7th Cir. 1996); Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 759-60 (3d Cir. 1995); Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1473 (9th Cir. 1993).

Because the court's review must be "independent," and based on a preponderance of the evidence, which may also include evidence not presented at the administrative level, the court's focus is not simply on whether the hearing officer erred, but rather, more broadly, whether the child involved is receiving the free appropriate public education mandated in the IDEA.  See Susan N., 70 F.3d at 760; Oberti by Oberti v. Board of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1220 (3d Cir. 1993) (" . . .

the [district] court is free to accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the Act.").

In a case such as this one, where the Hearing Officer did not focus on all the relevant issues and therefore could not properly analyze whether FAPE would be provided at a particular school, the court need not place as much weight on the administrative decision as it might in other cases, and the additional evidence the court considers may weigh heavily in its determination. See Reid, 401 F.3d at 521 ("a hearing decision without reasoned and specific findings deserves little deference") (internal quotations omitted).

With its Motion for Summary Judgment, Plaintiffs filed a Motion to Accept Additional Evidence – namely, sworn statements by Edward Spector, Doctor of Psychology, and each of Jesse's parents. In its opposition to that motion, Defendant did not request an evidentiary hearing to cross-examine the witnesses. Even more importantly, Defendant did not challenge the accuracy of the statements Plaintiffs submitted. Plaintiffs' motion was granted on August 26, 2005, after full briefing by the parties.

The additional evidence, in conjunction with the evidence presented at the administrative level, strongly supports the conclusion that Jesse requires a small classroom environment and a calm, quiet learning environment to receive educational benefit,

and that placement at Wilson is inappropriate because of its inability to satisfy these requirements.

Dr. Spector, who conducted weekly group and individual therapy sessions with Jesse from September 2004 through June 2005, is obviously familiar with Jesse's situation and therefore able to provide meaningful insight into the type of environment he needs to receive FAPE. Dr. Spector described Jesse as having "significant sensory integration difficulties. It is often impossible for him to ignore, or 'tune out', extraneous noises such as those generated by crowds . . . Jesse finds it difficult to transition between classrooms when the noise and commotion of other students overwhelms him with sensory overload." Testimony of Dr. Spector, filed July 8, 2005, Dkt. #15. Dr. Spector further stated:

> Jesse has a history of anxiety in large groups, leading him to withdraw into himself. In classroom settings larger than ten students, he often becomes frustrated and anxious, resulting in his refusing to talk or participate in class discussions. When experiencing these strong emotions he becomes unable to attend to the teacher's lecture and is unavailable for learning until he is able to calm himself down in a quieter and less crowded room.

Id.

Dr. Spector concluded that "Jesse requires a small class size, no more than ten students, in order to participate in classes and learn. He needs a low student-teacher ratio, with close supervision and support to help him stay on task and complete work assignments." Id.

After taking a tour of Wilson with a DCPS Program Specialist

for Special Education, Dr. Spector concluded that Wilson was not an appropriate placement for Jesse.  He noted that the sheer size of the school, exceeding 1,400 students, would hinder Jesse's educational progress.  He further pointed out that Wilson's special education program focuses on learning disabled, not emotionally disturbed students like Jesse.  "Students are placed in the Special Education classrooms based on their academic needs, and . . . there are no students in the Special Education classrooms who have an Emotionally Disturbed (ED) classification as their primary disability.  Instead . . . students with an ED classification are placed in regular education classrooms, which usually have about 30 students."  <u>Id.</u>

Dr. Spector summarized his conclusions as follows:

> Navigating the large building, particularly when other students are passing through the halls and generating much noise, would cause Jesse extreme anxiety and lead him to be unavailable to learn.  Jesse's tendency to withdraw in a classroom containing more than ten students signifies that he would not make progress in special education classes which have more than 15 students. Moreover, Wilson's policy of placing emotionally disturbed students in regular classrooms indicates that he might be placed in classes with approximately 30 students.  In either case, Jesse would simply emotionally withdraw from his environment, and would receive no benefit from any teaching.

***

> In sum, Wilson is not a place where Jesse would make educational progress.  He would not be able to handle its size, noise level, or class size.  The shear [sic] scope, size and layout of the building and the special education program there would likely cause him such distress as to make him completely unavailable for learning due to the

18

> resulting anxiety . . . My conclusion is that there is a
> high probability that Jesse would suffer a significant
> deterioration in his functioning and emotional state
> should he attend Wilson.

Id.  This statement provides compelling evidence that Wilson could
not serve Jesse's educational needs.

The testimony of Jesse's mother provides further support for
the conclusion that Wilson is not an appropriate placement.  She
stated, "[a]t Deal, there were around 30 students in his classes.
The sheer number of students often caused him to shut down
emotionally and stop paying attention to what was going on in the
classroom."  Testimony of Susan Gellert, filed July 8, 2005, Dkt.
#15, at 2.  During that same tour of Wilson with Dr. Spector and
the Program Specialist for the Special Education Branch of DCPS,
Jesse's mother observed a regular education classroom with seats
for fifty students.  As noted above, this is the classroom size in
which Jesse would be placed for significant periods of time.

As in the due process hearing, Wilson was unable to provide
Jesse's mother with a definitive answer to the class size Jesse
would attend.  She continued:  "Every time Ms. Lee was asked the
maximum class size, the number would go up, but it was always much
higher than the maximum of ten students which Jesse can handle.
Even the special education classes have 15 to 20 or more students,
again too many for Jesse."  Id.  Based on the information she
gained during the administrative process and her tour of the
facilities at Wilson, Jesse's mother also concluded that "Wilson

19

would be quite detrimental to Jesse's emotional health and that he would not make progress in his education there."[5]  Id.

From this uncontradicted evidence in the record, and Defendant's failure to show Jesse could receive FAPE without the specific accommodations of small class size and a quiet, calm learning environment, Plaintiffs have established by a preponderance of the evidence that Jesse's current IEP is insufficient for failure to include these accommodations and that placement at Wilson was inappropriate.  Accordingly, Plaintiffs' Motion must be **granted**, and Defendant's Motion must be **denied**.

### C.  Defendant Must Reimburse Plaintiffs for the Expenses They Incurred at Kingsbury

The Supreme Court has held that courts may order school districts to reimburse parents for expenses incurred by the unilateral placement of their child at a private school if: 1) the student's public school IEP was inappropriate, thereby denying the child FAPE; and 2) the private placement desired by the parents is proper.  Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ., 471 U.S. 359, 369 (1985); Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 10-11 (1993).

First, for the reasons set forth above, Jesse's IEP and

_____

[5]  Shockingly, both Dr. Spector and Susan Gellert stated that they witnessed a student in one class sitting apart from the rest of the students with his mouth taped shut.  It goes without saying that conditions such as these could have serious negative consequences on any student, let alone an emotionally disturbed one like Jesse.

placement at Wilson were inappropriate for failure to take into account his need for a small class size and quiet controlled learning environment.

Second, Kingsbury is clearly an appropriate placement for Jesse.  Jesse has improved his grades tremendously while attending Kingsbury.  The Hearing Officer's finding further supports this conclusion: "Kingsbury offers a program that is reasonably calculated to provide educational benefit to the student."  AR at 5.  Finally, Defendant has provided no evidence to suggest that Kingsbury is an inappropriate placement.  Indeed, Defendant's previous decision to reimburse Plaintiffs for the costs incurred at Kingsbury during the 2003-2004 school year indicates that Kingsbury is an appropriate placement.  Accordingly, Defendant must reimburse Plaintiffs for costs incurred for Jesse's education there for the 2004-2005 school year.

### D. Defendant Must Reimburse Plaintiff for Reasonable Attorneys' Fees

Section 1415(i)(3)(B)(i)(I) of the IDEA gives courts the authority to grant reasonable attorneys' fees to "a prevailing party who is the parent of a child with a disability."  As this decision disposes of this case, and Plaintiffs have prevailed, they are entitled to reasonable attorneys' fees incurred in this litigation.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary

21

Judgment, [#14], is **granted**, and Defendant's Cross Motion for Summary Judgment, [#18], is **denied.**

The Court need not fully address the parties' arguments regarding:  1) the Gellerts' objection to Williams' testimony at the due process hearing (Count 2); 2) the Hearing Officer's refusal to allow Jesse's father to testify regarding the effect of transferring Jesse to Wilson (Count 4); and 3) Defendant's failure to present certain witnesses at the due process hearing (Count 5), since the Court's decision affords Plaintiffs all the relief requested in their Complaint.  Pls.' Am. Comp. at ¶ 24.

An Order will issue with this Memorandum Opinion.


May 18, 2006
                              /s/_____
                              GLADYS KESSLER
                              United States District Judge


**Copies To: Attorneys of Record Via ECF**

22